# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1)    MANDI WRIGHT, Individually and as Administrator of the Estate of CORY WRIGHT, Deceased,<br><br>       Plaintiff,<br><br>v.<br><br>(2)    GARY STANLEY, individually and in his official capacity as Sheriff of Woodward County;<br><br>(3)    JENNIFER COLLISON, in her individual capacity,<br><br>(4)    JEREMY CANNON, in his individual capacity,<br><br>(5)    BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF WOODWARD,<br><br>       Defendants. | Case No.: 11-CIV-1235-C<br>**ATTORNEY LIEN CLAIMED**<br>**JURY TRIAL DEMANDED** |

## SIXTH AMENDED COMPLAINT

Plaintiff, Mandi Wright, Individually and as Administrator of the Estate of Cory Wright, deceased, files this Sixth Amended Complaint against the above named Defendants. Plaintiff states as follows:

### PRELIMINARY STATEMENT

1.     This is an action for the deprivation of rights secured by the Constitution and laws of the United States, actionable through 42 U.S.C. § 1983, and the Oklahoma State

Constitution, Art. II, Section 30, and Oklahoma state law, based on injuries sustained by Plaintiff's decedent while detained at the Woodward County Jail facility in August of 2011.

2. Specifically, Defendants Jennifer Collison and Jeremy Cannon acted in a manner that was objectively unreasonable in the classification and cell assignment decision relative to Plaintiff's decedent, and/or exhibited deliberate indifference to a substantial risk of harm to Plaintiff's decedent when they placed him into an overcrowded jail cell with inmates who expressed an imminent desire to assault Cory Wright because the cell was already overcrowded. Defendants Gary Stanley and Board of County Commissioners of the County of Woodard exhibited deliberate indifference to the substantial risk of serious harm to Plaintiff's decedent by failing to take reasonable steps in response to conditions of confinement at the Woodward County Jail. Defendant Stanley is further liable for failing to adequately train his employees, and for negligent hiring and retention of jail staff.

## **PARTIES, JURISDICTION AND VENUE**

3. Plaintiff Mandi Wright is a resident and citizen of the State of Texas. She is the surviving spouse of decedent Cory Wright who died November 21, 2011, and the duly appointed Administrator of his Estate.

4. The Board of County Commissioners of Woodward County, Oklahoma ("Board") is the legislative body for Woodward County Oklahoma. Pursuant to Title 57, Section 41 of the Oklahoma Statutes, the Board shall provide the county with access to a jail facility or physical plant that is adequate for the safekeeping of prisoners. Board is further liable for violations of the Oklahoma State Constitution committed by county employees acting within the scope of their employment.

5. Gary Stanley is the Sheriff of Woodward County Oklahoma. Pursuant to Title 57, Section 47 of the Oklahoma Statutes, Stanley is responsible for jail operations. Defendant Stanley is a final policy-maker under Oklahoma law. He is sued in both his official and individual capacities.

6. Jennifer Collison ("Collison") and Jeremy Cannon ("Cannon") were employees of Woodward County working at the Woodard County Jail on August 16, 2011. They are sued in their individual capacities.

7. At all relevant times set forth below, Defendants Board, Stanley, Collison and Cannon were acting under color and authority of state law.

8. Jurisdiction over the federal claims is exists pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C §1367(a).

9. Venue of this Court is exists pursuant to 28 U.S.C. § 1391(b). The practices alleged were committed within the Western District for the State of Oklahoma.

## FACTUAL ALLEGATIONS

10. Mr. Wright was arrested on August 16, 2011, and booked into the Woodward County Jail at 2338 hours on misdemeanor charges of driving under the influence. During the booking process, Wright communicated information to Collision and/or Cannon that he had a prior history of agoraphobia, and that he was taking physician prescribed medication that included Zoloft, Xanax, Meloxicam and Trazodone.

11. In their capacity as jailers at the Woodward County Jail ("WCJ"), Collison and Cannon's duties included book-in procedures for arrestees, the supervision and classification of arrestees, escorting, and cell assignments of arrestees within the WCJ.

3

12. Collison booked Mr. Wright into the WCJ and assigned him to cell 6, which already contained six other detainees. Cell 6 was 114 square feet, and based on the Oklahoma Jail Standards, had a maximum rated capacity of 3 people. Mr. Wright would be the seventh person placed inside cell 6.

13. Upon information and belief, Collison knew that cell 6 already contained six people when she assigned Wright to the cell, and she knew that cell 6 was already over the rated capacity.

14. Cannon and/or Collision then escorted Mr. Wright to cell 6 where the inmates inside the cell informed him and/or Collison that the cell was already overcrowded and that they would harm Mr. Wright if the jailers insisted on placing him inside.

15. Upon information and belief, the detainees inside cell 6 communicated the seriousness and immediacy of their intentions to Cannon and/or Collison in a manner that would lead any reasonable jail official to arrive at the single conclusion that placing Mr. Wright inside cell 6 would expose him to a substantial risk of serious harm in the form of an immediate physical attack by the other detainees.

16. In disregard of the substantial risk of serious harm to Mr. Wright, Collison and/or Cannon then placed Mr. Wright into cell 6 with inmates who directly informed Cannon and/or Collison of their specific intent to harm Mr. Wright.

17. Before Cannon and/or Collison left the run, they heard the noise of a physical altercation coming from cell 6 where Mr. Wright had been placed.

18. Collison and/or Cannon knew that other inmates in cell 6 posed a substantial risk of harm to Mr. Wright, and despite that knowledge, Collison and/or Cannon deliberately placed Mr. Wright into cell 6 with disregard to the consequences.

19. According to an Investigation Report, Collison and Cannon returned to cell 6 and observed a savagely beaten Mr. Wright slouched down under the table with several other inmates standing over him.

20. The inmates had brutally beaten Mr. Wright consistent with their representations to Collison and/or Cannon.

21. Mr. Wright was taken to Woodward Regional Hospital's emergency room where medical records indicated he suffered severe physical injuries to his face, loss of memory and other long-term injuries. Mr. Wright eventually succumbed to his injuries and passed away on November 21, 2011.

22. Prior to placing Mr. Wright in the cell, Defendants Collison and/or Cannon knew that the other inmates in cell 6 posed a substantial risk of harm to Mr. Wright, and despite that knowledge, Collison and Cannon failed to take reasonable steps to respond to that risk.

23. Prior to placing Mr. Wright in his cell, the WCJ had already exceeded the maximum rated capacity of forty-one (41) people for the facility. At the time of the incident, the WCJ had a population of sixty-four (64) people, which is more than fifty percent (50%) of the maximum capacity.

24. As of August 16, 2011, the WCJ "Total Inmate In Jail By Date Report," indicated that the WCJ had exceeded its rated capacity for 846 consecutive days, dating back to April 23, 2009.

25. The overcrowded conditions at the WCJ persisted unabated from April 2009 through August 2011. During that time, citations issued by the Oklahoma Jail Inspector repeatedly warned Defendants Board and Stanley of the overcrowded conditions at the WCJ, and Defendant Stanley routinely apprised the Board of those reports during official Board meetings where Stanley would propose responses to the citations, which the Board routinely approved.

26. In August 2009, Woodward County voted to build a new jail facility. That facility did not begin operations until early 2012. Prior to the new facility opening, Defendants Stanley and Board continued to use the existing Woodward County Jail to house detainees.

27. As early as 2009, Defendant Stanley had actual knowledge that the conditions of confinement at the Woodward County Jail presented a substantial risk of serious harm to both detainees and staff.

28. Upon information and belief, the specific conditions included chronic overcrowding, which negatively impaired the ability to properly classify and segregate the jail population, which led to cells housing both violent and non-violent offenders and pre and post-trial detainees. The overcrowded conditions further necessitated additional staff to adequately supervise and respond to the additional population beyond what Stanley provided, and the conditions required additional training specific to the consequences of overcrowding

to reduce the potential for inmate-on-inmate violence beyond what Stanley provided. An inadequate physical plant that lacked direct supervision into the jail cells further compounded these dangerous conditions.

29. Sometime prior to 2011, the Oklahoma Jail Inspector explicitly told Defendant Stanley that the Woodward County Jail was the second most dangerous facility in all of Oklahoma. This information was published in the local newspaper. Upon information and belief, Defendant Board also had actual knowledge of the dangerous conditions of confinement at the Woodward County Jail prior to 2011.

30. Despite actual knowledge that the conditions of confinement at the Woodward County Jail continued to present a substantial risk of serious harm to both inmates and staff, Defendants Stanley and Board failed to take reasonable steps to address those conditions while they waited for the new jail facility to open.

31. Instead, Defendants Board and Stanley repeatedly responded to ongoing citations from the Jail Inspector by stating that a new jail was being constructed. Defendants Stanley and Board knew that construction of a new jail did not alleviate the existing conditions of confinement at the Woodward County Jail which posed a substantial risk of serious harm to the inmates, and despite that knowledge, Defendants Stanley and Board failed to take reasonable steps to alleviate the dangerous conditions within the existing jail facility with deliberate indifference to the consequences.

# FIRST CAUSE OF ACTION AGAINST STANLEY AND BOARD

## Deliberate Indifference – Conditions of Confinement
## 42 U.S.C. § 1983 -Amendment XIV to the U.S. Constitution

Plaintiff re-alleges and reincorporates the foregoing paragraphs and further alleges:

32. Defendant Board is responsible for providing a jail facility that is adequate for the safekeeping of Woodward County inmates, and Defendant Stanley is responsible for the day-to-day operations within the facility provided by Board.

33. Defendants Board and Stanley knew the conditions of confinement at the existing jail facility posed a substantial risk of serious harm to both the inmates and staff, and despite that knowledge, Defendants Stanley and Board failed to take reasonable steps to respond to those conditions with deliberate indifference to the consequences.

34. Specifically, the Defendants maintained an official practice of housing arrestees in overcrowded cells with actual knowledge that such a practice created a substantial risk of serious harm to arrestees that resulted from the inability to adequately classify, segregate and supervise the inmate population, and Defendant Stanley's failure to adequately staff the facility to account for overcrowding and train jail employees to respond to the overcrowded conditions that they would likely encounter on a frequent basis. These dangerous conditions were magnified by the failure of Defendant Board to provide a jail facility with direct supervision and its failure to ensure that Defendant Stanley utilized alternative housing opportunities.

35. As a direct and proximate result of the deliberate indifference exhibited by Defendants Board and Stanley, Plaintiff's decedent suffered serious injuries and death when

jailers placed him in an overcrowded cell with violent inmates who explicitly informed the jailers of their immediate intent to assault Cory Wright if they placed him in the cell, for which Defendants are liable under the Fourteenth Amendment to the U.S. Constitution, actionable through 42 U.S.C. § 1983.

## SECOND CAUSE OF ACTION AGAINST BOARD, COLLISON AND CANNON

### Okla. Const. Art. 2, § 30 – Excessive Force
### 42 U.S.C. § 1983 – Excessive Force

Plaintiff re-alleges and reincorporates the foregoing paragraphs and further alleges:

36. Defendants Collison and/or Cannon had actual knowledge that inmates within cell 6 expressed an immediate intent to assault Plaintiff's decedent if he was placed inside the cell.

37. Despite actual knowledge of the intent to assault Wright, and with the ability to prevent the assault by placing Wright elsewhere in the facility or in another facility, Defendants Collison and/or Cannon set in motion a series of events that they knew would result in an assault on Cory Wright.

38. As a direct and proximate result of their knowledge that an assault would occur, Defendants Collision and/or Cannon permitted the use excessive force against Wright in violation of Art. 2, Section 30 of the Okla. Const. for which the Board is liable under state law, and in violation of the Fourth Amendment to the U.S. Constitution for which Collison and Cannon are liable.

# THIRD CAUSE OF ACTION AGAINST STANLEY

## Deliberate indifference - Failure to Train
## 42 U.S.C. § 1983

Plaintiff re-alleges and reincorporates the foregoing paragraphs and further alleges:

39. Defendant Stanley had actual knowledge that the Woodward County Jail suffered from chronic and persistent overcrowding, and he further knew that overcrowding created dangerous conditions of confinement within the jail facility.

40. Defendant Stanley knew that jail staff would routinely work in the jail facility while it was overcrowded, and he knew that the overcrowded conditions would require jail staff to make frequent decisions regarding the housing, classification and segregation of inmates that could result in inmate assaults if handled incorrectly.

41. Due to the chronic nature of overcrowding, Defendant Stanley knew that injuries to inmates as a result of inmate-on-inmate violence were inevitable if he failed to train jail staff in how to adequately respond to the effects of overcrowding, and with deliberate indifference to the safety of the arrestees, Stanley failed to take reasonable steps to adequately train jail staff to respond to the chronic overcrowding.

42. As a direct and proximate result, of Defendant Stanley's failure to adequately train jail staff, Plaintiff's decedent was placed inside an overcrowded cell, despite available alternatives, with inmates who communicated an immediate intent to harm him, for which Stanley is liable pursuant to the Fourteenth Amendment to the U.S. Constitution, actionable through 42 U.S.C. § 1983.

# FOURTH CAUSE OF ACTION AGAINST COLLISION AND CANNON

## Objectively Unreasonable Conduct
## in violation of the Fourth Amendment
## 42 U.S.C. § 1983

Plaintiff re-alleges and reincorporates the foregoing paragraphs and further alleges:

43. Defendants Collision and Cannon had actual knowledge that Plaintiff was intoxicated, taking several medications, and that had communicated mental health issues prior to their decision to assign him to cell 6.

44. Defendants Collison and Cannon also knew that cell 6 was already overcrowded and contained inmates with violent felony charges.

45. Defendants Collison and Cannon also knew that they could keep Wright detained in the booking area instead of placing him in cell 6.

46. Defendants Collison and/or Cannon also knew that inmates within cell 6 did not want them to place another inmate inside the already overcrowded cell 6, and that those inmates communicated that intent to Collison and/or Cannon on multiple occasions immediately before Cannon placed Wright in the cell and closed the door.

47. Based upon the facts and information known to Defendants Cannon and/or Collision regarding the condition of Wright and the population and demographics of the inmates in cell 6, the decision to place Wright in cell 6 and directly expose him to the violent inmates inside was objectively unreasonable and in violation of the Fourth Amendment to the United States Constitution, actionable through 42 U.S.C. § 1983.

# FIFTH CAUSE OF ACTION AGAINST COLLISION AND CANNON

## Deliberate Indifference
## Failure to Protect
## 42 U.S.C. § 1983

Plaintiff re-alleges and reincorporates the foregoing paragraphs and further alleges:

48. Defendants Collision and Cannon had actual knowledge that inmates within cell 6 intended to assault Plaintiff's decedent if he was placed in the cell.

49. The inmates in cell 6 communicated the immediacy of their intent to Collison and Cannon, and despite knowledge that the inmates would assault Wright, and despite the availability of alternative locations to house Wright, Collison and Cannon exposed Wright to direct and immediate harm by placing him in cell 6.

50. Plaintiff's decedent suffered substantial injuries as a direct and proximate result of Defendants Collison and Cannon's failure to protect him from other inmates in violation of the Fourteenth Amendment to the U.S. Constitution actionable though 42 U.S.C. § 1983.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Mandi Wright, Individually and as Administrator of the Estate of Cory Wright, deceased, respectfully prays this Court to enter a judgment against Defendants for the deprivation of Cory Wright's rights secured by the Fourth and Fourteenth Amendments to the United States Constitution, the laws of the United States, and Article II Section 30 of the Oklahoma Constitution and laws of the state of Oklahoma, and award Plaintiff as follows:

a. Any and all appropriate injunctive relief;

b. Declaratory relief affirming that Defendants deprived Mr. Wright of his rights under the Fourth and Fourteenth Amendments of the United States Constitution and Article II Section 30 of the Oklahoma Constitution and declaring Defendants liable to Mr. Wright for their actions;

c. Wrongful death damages including, but not limited to damages for Cory Wright's pain and suffering prior to his death; damages for Cory Wright's mental anguish prior to his death; loss of financial support of contributions of money to the surviving spouse Mandi Wright and Cory Wright's children; grief of surviving spouse Mandi Wright; loss of the society, services, companionship, and marriage relationship of decedent's spouse Mandi Wright; the grief of the children of Cory Wright; the loss of companionship and parental care, training, guidance, or education that would have been forthcoming from Cory Wright to his children, and the loss of companionship of Cory Wright to his children; the loss of the companionship of Cory Wright by his parents; pain and suffering of Cory Wright; and medical and burial expenses of Cory Wright and any other damages allowed by law as a result of Defendants' violations of the Fourth and Fourteenth Amendments of the United States Constitution as well as Article II Section 30 of the Oklahoma Constitution, which exceed *Seventy Five Thousand Dollars* ($75,000.00);

d. Punitive damages against the individual Defendants Jennifer Collison, Jeremy Cannon, and Gary Stanley, in his individual and official capacities, in an amount in excess of *Seventy Five Thousand Dollars* ($75,000.00) to punish them for their intentional and willful conduct against Mr. Wright;

e. Costs of this action, including but not limited to, attorney fees and expenses, pre-judgment and post judgment interest; and

f. Any other relief the Court deems appropriate.

Respectfully submitted,

_s/J. Spencer Bryan_
J. Spencer Bryan, OBA # 19419
Steven J. Terrill, OBA # 20869
Bryan & Terrill Law, PLLC
9 East 4th St., Ste. 307
Tulsa, OK 74103
Tele: (918) 935-2777
Fax: (918) 935-2778
jsbryan@bryanterrill.com
sjterrill@bryanterrill.com
*Attorneys for Mandi Wright, Individually and as Administrator of the Estate of Cory Wright*

**CERTIFICATE OF SERVICE**

       I hereby certify that on September 23, 2014, I electronically transmitted the forgoing instrument to the Clerk of the Court using the CM/ECF System for filing and transmittal of Notice of Electronic Filing to the following ECF registrants:

Dustin J. Hopson
dhopson@czwglaw.com

Chris J. Collins
cjc@czwglaw.com

Jamison C Whitson
jwhitson@czwglaw.com

Daniel J. Card
dcard@piercecouch.com

David Lee
david@leelawcenter.com

Emily Fagan
Emily@leelawcenter.com

William Brett Behenna
brett@leelawcenter.com

Noble K. McIntyre
noble@mcintyrelaw.com

Jeremy A. Thurman
jeremy@mcintyrelaw.com

                                                                         *s/J. Spencer Bryan*
                                                                        J. Spencer Bryan, OBA # 19419