IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

MANDI WRIGHT, Individually and as )
Administrator of the Estate of CORY )
WRIGHT, Deceased, )
 )
        Plaintiff, )
 )
vs. )   Case No. CIV-11-1235-C
 )
GARY STANLEY, individually and )
in his official capacity as Sheriff of )
Woodward County; JENNIFER )
COLLISON, in her individual capacity; )
JEREMY CANNON, in his individual )
capacity; BOARD OF COUNTY )
COMMISSIONERS OF THE COUNTY )
OF WOODWARD; )
 )
        Defendants. )

## MEMORANDUM OPINION AND ORDER

Before the Court are the Motions for Summary Judgment of Defendants Jennifer Collison and Jeremy Cannon (Dkt. Nos. 211 & 212). Each Motion has a Response (Dkt. Nos. 225 & 226) and a Reply (Dkt. Nos. 233 & 238). The Motions are now at issue.

### I. BACKGROUND

On August 16, 2011, Woodward Police Officers arrested Plaintiff's husband, Cory Wright, at 11:38 p.m. on complaint of driving under the influence of alcohol. Police also arrested Wright's passengers David Anglin and Jeff Tindel for public intoxication. Wright, Anglin, and Tindel worked for an oil field company and had to be at a "call-out" in the next three or so hours. (Def. Collison's Br., Dkt. No. 211, Ex. 1, at 54.) The officers took the three men to the old Woodward County Jail ("WCJ"), and Tindel and Wright were

transported in the same police vehicle. Tindel was worried about being fired for missing the call-out. (Id. at 53-54.) During the drive, Tindel and Wright discussed the probability of losing their jobs, and they "had a disagreement." (Id. at 56-57.) Defendants Jennifer Collison and Jeremy Cannon were jailers on duty that night at the WCJ. (Id. at 3; Resp., Dkt. No. 225, at 1.) Collison was a training officer who was training Cannon. (Id.) Once the three men were booked in, Cannon took each man separately to a change out room to change into jail clothes. (Def. Collison's Br., Dkt. No. 211, at 3; Resp., Dkt. No. 225, at 2.) During this process, Wright told Cannon that he and Tindel would fight if Wright were put in the drunk tank with Tindel. (Def. Cannon's Br., Dkt. No. 213, Ex. 1.) Cannon relayed this information to Collison, who decided to assign Wright to Cell 6, which contained approximately six other inmates. All the cells in WCJ were overcapacity at that time. (Def. Collison's Br., Dkt. No. 211, at 5; Resp., Dkt. No. 225, at 3.) It is undisputed that Cannon escorted Wright from booking and placed Wright in Cell 6. (Def. Cannon's Br., Dkt. No. 213, at 3; Resp., Dkt. No. 226, at 2.) Plaintiff asserts the other inmates in Cell 6 told Cannon not to place Wright in the cell and threatened to harm Wright. Cannon told the inmates to give him five minutes to find another cell for Wright. (Id.) Inmate Michael Riggs told Cannon that five minutes would not work. (Id.) Cannon left the cell to return to the booking area. Within 45 seconds to one minute of placing Wright in Cell 6, Cannon and Collison heard the sounds of fighting and yelling. (Def. Cannon's Br., Dkt. No. 213, at 4; Resp., Dkt. No. 226, at 1.) Cannon and Collison ran to Cell 6 where they discovered Wright on the floor with injuries to his face. Wright was taken to the Woodward Regional Hospital emergency

2

room where he was diagnosed with a fracture to the facial bones near his eye. (Def. Collison's Br., Dkt. No. 211, at 8; Resp., Dkt. No. 225, at 1.) A CT of Wright's brain showed "[n]o acute intracranial abnormality," and Wright did not lose consciousness. (Def. Collison's Br., Dkt. No. 211, Ex. 14, at 2 & 8.) Plaintiff asserts that Wright "suffered severe physical injuries to his face, loss of memory and other long-term injuries" because of this incident. (Sixth Am. Cmpl., Dkt. No. 187, at 5.) Wright was released from the hospital and the jail on August 17, 2011. (Def. Collison's Br., Dkt. No. 211, at 9; Resp., Dkt. No. 225, at 1.) On October 28, 2011, Wright filed this lawsuit, alleging that Defendants violated his rights under the Eighth and Fourteenth Amendments of the U.S. Constitution. (Cmpl., Dkt. No. 1, at 2.) On November 22, 2011, Wright died of an overdose of prescription pills. (Def. Collison's Br., Dkt. No. 211, Ex. 16, at 1.) Plaintiff is now Mandi Wright, "Individually and as Administrator of the Estate of Cory Wright." Plaintiff's Sixth Amended Complaint (Dkt. No. 187) alleges that Collison and Cannon knew the inmates in Cell 6 would harm Wright, failed to protect Wright, and thus acted with deliberate indifference in violation of the Due Process Clause of the Fourteenth Amendment. Plaintiff also seeks wrongful death damages for, in part, the mental anguish and pain and suffering of Wright prior to death and for the grief and loss of companionship experienced by Plaintiff and her children.

Defendants Cannon and Collison argue the Court must grant summary judgment in their favor for several reasons. Both argue they cannot be held liable for "deliberate indifference" because neither had subjective knowledge of any threat to Wright and because the facts show a lack of "personal participation." Both argue Plaintiff cannot prove the jail

assault caused Wright's death, and both assert they are entitled to qualified immunity. Collison also argues that Plaintiff, individually, lacks standing to bring any claim or collect damages.[1]

## II. STANDARD OF REVIEW

Summary judgment is properly granted if the movant shows that no genuine dispute as to any material fact exists and that the movant "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it affects the disposition of the substantive claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 247, 248 (1986). The party seeking summary judgment bears the initial burden of demonstrating the basis for its motion and of identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted). If the movant satisfactorily demonstrates an absence of genuine issue of material fact with respect to a dispositive issue for which the non-moving party will bear the burden of proof at trial, the non-movant must then "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324. These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." Id. Such evidentiary materials include affidavits,

---

[1] Defendants Cannon and Collison also argue for summary judgment in their favor on Plaintiff's claims of "excessive force" and "objectively unreasonable conduct." (Pl.'s Sixth Am. Cmpl., Dkt. No. 187, at 9 & 11.) The Court need not address these arguments because those claims have been dismissed. (See Order, Dkt. No. 248.)

deposition transcripts, or specific exhibits. Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir. 1992). When considering a motion for summary judgment, a court must "'view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party.'" Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1225 (10th Cir. 2000) (quoting Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir. 1999), *abrogated on other grounds by* Eisenhour v. Weber Cnty., 739 F.3d 496 (10th Cir. 2013)).

### III.  ANALYSIS

A.  "Deliberate Indifference"

"'[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners.'" Farmer v. Brennan, 511 U.S. 825, 833 (1994) (quoting Cortes-Quinones v. Jimenez-Nettleship, 824 F.2d 556, 558 (1st Cir. 1988)). Protection against other inmates is "a 'conditio[n] of confinement'" subject to the protections of the Eighth Amendment. See id. (citing Wilson v. Seiter, 501 U.S. 294, 303 (1991)). Because Wright was a pretrial detainee, Plaintiff's claim arises under the protections of "the Due Process clause rather than the Eighth Amendment." Lopez v. LeMaster, 172 F.3d 756, 759 n.2 (10th Cir. 1999) (citing Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979)). However, the analysis is the same. Id. (citing Hare v. City of Corinth, 74 F.3d 633, 643 (5th Cir. 1996)). To establish a claim of "deliberate indifference," Plaintiff must prove two elements. First, Plaintiff must show the alleged deprivation is "'sufficiently serious' under an objective standard." Howard v. Waide, 534 F.3d 1227, 1236 (10th Cir. 2008) (quoting Farmer, 511 U.S. at 834). This means

5

Plaintiff must show Wright was "incarcerated under conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 834. Second, Plaintiff must show Defendants "had subjective knowledge of the risk of harm." Howard, 534 F.3d at 1236. The official must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. Subjective knowledge of the risk of harm "may be proved 'in the usual ways, including inference from circumstantial evidence, and a fact-finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" Howard, 534 F.3d at 1236 (quoting Farmer, 511 U.S. at 842).

In the instant case, Collison and Cannon argue Plaintiff cannot meet the second requirement because neither jailer had subjective knowledge or awareness of the risk of harm to Wright. Collison has testified that she remained at the booking desk while Cannon escorted Wright to, and placed him inside, Cell 6. (Def. Collison's Br., Dkt. No. 211, Ex. 4., at 93 & 111.) Collison asserts she did not hear and had no knowledge of any threats by the inmates in Cell 6 to harm Wright. To dispute these facts, Plaintiff has provided affidavits of two inmates in Cell 6, Mark Jones and Michael Gonser, who state that Collison and Cannon forced Wright into Cell 6. (Pl.'s Resp., Dkt. No. 225, Ex. 3 & Ex. 13.) Although these affidavits were filed in a separate case, Plaintiff has listed both Jones and Gonser as trial witnesses. Plaintiff also has provided testimony from Tindel tending to show that yelling from the Cell 6 inmates could be heard in the booking area before Wright was

6

assigned to Cell 6. (Pl.'s Resp., Dkt. No. 225, Ex. 4, at 69-70, 99.) Collison argues Tindel's testimony is inaccurate; however, the Court's function at the summary judgment stage is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. The evidence which both parties have proffered clearly shows that a genuine dispute exists as to whether Collison had knowledge of the risk of harm to Wright.

Cannon has testified that inmate Riggs said placing Wright in Cell 6 and even leaving Wright in Cell 6 for five minutes "won't work." (Def. Cannon's Br., Dkt. No. 213, Ex. 2, at 73.) Cannon asserts that he did not hear Riggs, or any other inmate in Cell 6, threaten to harm Wright. Tindel's Declaration controverts Cannon's testimony. Tindel declares the Cell 6 inmates yelled at the jailer "that they would physically harm Cory if he was placed in their cell." (Pl.'s Resp., Dkt. No. 226, Ex. 5, at 2.) Cannon urges the Court to disregard Tindel's testimony because Tindel was intoxicated and because the testimony is "blatantly contradicted by the record, such that no reasonable jury could believe him." (Def. Cannon's Br., Dkt. No. 213, at 19.) Cannon has produced evidence tending to show that Tindel's testimony inaccurately describes the cell door on Cell 6 and the location of Cell 6 in regards to the drunk tank. (See id. at 22.) However, this addresses only a small portion of Tindel's testimony and is not sufficient to prove the testimony is "so utterly discredited by the record that no reasonable jury could [] believe[] him." Scott v. Harris, 550 U.S. 372, 380 (2007). Furthermore, Tindel's intoxication bears on his credibility as a witness and falls within the province of the jury, not the Court. Seamons v. Snow, 206 F.3d 1021, 1026 (10th Cir. 2000)

7

("It is axiomatic that a judge may not evaluate the credibility of witnesses in deciding a motion for summary judgment."). The Court is not persuaded that Tindel's testimony should be disregarded. Consequently, a genuine dispute exists as to whether Cannon had knowledge of the risk of harm to Wright.

Subjective knowledge alone is not sufficient to prove the second element of deliberate indifference. Plaintiff must show Defendants responded in an "'objectively unreasonable manner,'"—i.e., that Defendants "'knew of ways to reduce the harm but knowingly [or] recklessly declined to act.'" Howard, 534 F.3d 1239-40 (quoting Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 620 (11th Cir. 2007)). If Defendants knew the inmates in Cell 6 posed a substantial threat of harm to Wright, they "had a constitutional duty to consider all reasonable means of protecting [Wright]." Id. at 1240. The record, viewed in the light most favorable to the non-moving party, shows Collison and Cannon may have disregarded known reasonable responses available to them, including contacting a supervisor or taking Wright back to the booking area. Thus, a reasonable jury could find that Defendants Collison and Cannon had subjective awareness of the risk of harm to Wright and responded in an objectively unreasonable manner.

B. Personal Participation

42 U.S.C. § 1983 provides a plaintiff with a cause of action against state actors who infringe upon the plaintiff's constitutional rights. See Haines v. Fisher, 82 F.3d 1503, 1508 (10th Cir. 1996). "The purpose of § 1983 is to deter state actors from using their positional authority to deprive individuals of their constitutionally guaranteed rights and to provide a

8

remedy to victims if such deterrence fails." Smith v. Cochran, 216 F. Supp. 2d 1286, 1290 (N.D. Okla. 2001). Plaintiff has sued both Collison and Cannon in their individual and official capacities. "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997). An "'affirmative link' between each defendant and the constitutional deprivation" must exist. Duffield v. Jackson, 545 F.3d 1234, 1238 (10th Cir. 2008) (citation omitted). Defendant Collison argues that she cannot be held liable under 42 U.S.C. § 1983 because she did not personally participate in the escorting and placing of Wright in Cell 6 and because she did know of any risk of harm to Wright. Collison further argues that she cannot be held liable based solely on her position as Cannon's training officer. Collison is correct that "there is no concept of strict supervisor liability under section 1983." Jenkins v. Wood, 81 F.3d 988, 994 (10th Cir. 1996) (internal quotation marks and citations omitted). Cannon argues that he cannot be held liable because no causal connection exists between him and the injuries to Wright. The Court does not find the arguments of Collison and Cannon persuasive. The Court already has determined that a genuine dispute exists regarding whether Collison and Cannon knew of the risk of harm to Wright. Viewing the evidence in a light most favorable to the non-moving party, Collison and Cannon personally participated in placing Wright in Cell 6 and failed to protect Wright from harm at the hands of the other inmates. These actions are "affirmatively linked" to the violation of Wright's constitutional rights and are at the heart of Plaintiff's "deliberate indifference"claim.

C. Wrongful Death

To hold Collison and Cannon liable for Wright's death, and thereby claim wrongful death damages, Plaintiff must show the alleged constitutional violation caused Wright's death. Martinez v. Carson, 697 F.3d 1252, 1255 (10th Cir. 2012) ("Section 1983 imposes liability on a government official who 'subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights.'"). In determining causation, "'[s]ection [1983] should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions.'" Id. (quoting Monroe v. Pape, 365 U.S. 167, 187 (1961), overruled on other grounds by, Monell v. Dep't of Social Servs. of City of N.Y., 436 U.S. 658 (1978)). Plaintiff must show that Collison and Cannon proximately caused Wright's death. Id.; see also James v. Chavez, 511 F. App'x 742, 746 (10th Cir. 2013). Defendants are not liable for harm that results from "unforeseeable intervening acts superseding their liability." Martinez, 697 F.3d at 1255. Such acts are referred to as "superseding causes" and relieve a defendant of liability because they are "'not within the scope of the risk created by the actor's conduct.'" See James, 511 F. App'x at 747 (quoting Restatement (Second) of Torts § 442B (1965)). "Wrongful actions by the victims of constitutional torts can, in the proper circumstances, constitute superseding causes to defeat liability." Id. at 748.

Plaintiff asserts that Wright required pain medication for the injuries suffered in the jail assault, that the assault caused brain injuries that gave Wright "traumatic headaches," and that those headaches impaired Wright's cognition and caused the fatal overdose of pills. (Pl.'s Resp., Dkt. No. 225, at 22-23; Pl.'s Resp., Dkt. No. 226, at 16-17.) Even if the Court

were to accept these facts as true, Wright's death is not a "natural" consequence of the alleged wrongful conduct of Collison and Cannon. Wright's action in taking a fatal amount of prescription pills more than three months after the assault at WCJ constitutes a superseding cause that Collison and Cannon could not have reasonably foreseen. See James, 511 F. App'x at 748-50 (holding that an officer who shot at, but missed, the victim and then ordered the SWAT team to enter the victim's home did not proximately cause the death of the victim because the victim's own action in attempting to stab a different officer was a superseding cause); see also Bodine v. Warwick, 72 F.3d 393, 400 (3d Cir. 1995) (holding that officers who unlawfully entered a home would not be liable for everything that resulted from the entry "such as the use of reasonable force to arrest [Plaintiff].") Defendants Collison and Cannon cannot be held liable for Wright's death.

D. Qualified Immunity

Collison and Cannon assert they are entitled to qualified immunity. "Qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Schwartz v. Booker, 702 F.3d 573, 579 (10th Cir. 2012) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). It is not simply a defense: "It is 'an immunity from suit.'" Id. (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). When a defendant's motion for summary judgment rests on a claim of qualified immunity, the Court "must grant qualified immunity unless the plaintiff can show (1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly

established at the time of the defendant's conduct." Estate of Booker v. Gomez, 745 F.3d 405, 411 (10th Cir. 2014). If Plaintiff successfully meets this burden, then Defendants, as ordinary movants for summary judgment, bear the burden of showing that no material issues of fact would defeat the claim of qualified immunity. Id. at 412 (citing Mick v. Brewer, 76 F.3d 1127, 1134 (10th Cir. 1996)).

Defendants have not met this burden. The Court has determined that facts material to Plaintiff's "deliberate indifference" claim are disputed and that a reasonable jury could find Defendants Collison and Cannon failed to protect Wright in violation of the Due Process Clause of the Fourteenth Amendment. Furthermore, any argument that the alleged unlawful conduct of Defendants did not violate a clearly established right is without merit. "[P]laintiff does not have to show that the specific action at issue had been held unlawful." Armijo by and through Chavez v. Wagon Mound Pub. Sch., 159 F.3d 1253, 1260 (10th Cir. 1998). Plaintiff need only establish that "'the asserted right's contours are sufficiently clear such that a reasonable official would understand that what he is doing violates that right.'" Id. (quoting Clanton v. Cooper, 129 F.3d 1147, 1156 (10th Cir. 1997)). In 1994, the U.S. Supreme Court clearly established that "'prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners.'" Farmer, 511 U.S. at 833 (quoting Cortes-Quinones, 824 F.2d at 558). At least as early as 1999, the Tenth Circuit made clear that pretrial detainees are afforded the same protection under the Fourteenth Amendment. Lopez, 172 F.3d at 759 n.2. Therefore, the law had clearly established at the time of the incident that Collison and Cannon had a duty to protect Wright from harm at the hands of other inmates.

Because a question of fact remains as to whether Collison and Cannon disregarded this duty, they are not entitled to qualified immunity.

E.  Individual Standing

Summary judgment against Plaintiff previously was granted in this case when the Court determined that Plaintiff, "Individually and as Surviving Spouse of Cory Wright," lacked standing to bring claims pursuant to 42 U.S.C. § 1983. (Order, Dkt. No. 153.) "[A] section 1983 claim must be based upon the violation of plaintiff's personal rights, and not the rights of someone else." Archuleta v. McShan, 897 F.2d 495, 497 (10th Cir. 1990) (citing Dohaish v. Tooley, 670 F.2d 934, 936 (10th Cir. 1982)); 42 U.S.C. § 1983. The Court vacated that judgment and allowed Plaintiff to amend the complaint and assert her federal claims as "Administrator of the Estate of Cory Wright." (Order, Dkt. No. 172.) At that time, Plaintiff still had surviving state law claims; those claims have since been dismissed. (Order, Dkt. No. 248.)  Neither Oklahoma's survival or wrongful death statutes provides an appropriate remedy for § 1983 claims. Berry v. City of Muskogee, Okla., 900 F.2d 1489, 1506-07 (10th Cir. 1990).  Thus, the only appropriate party is Wright's estate, and Plaintiff, individually, has no claim for damages on behalf of herself or her children. Id.

IV.  CONCLUSION

Accordingly, Defendant Jennifer Collison's Second Motion for Summary Judgment (Dkt. No. 211) is GRANTED IN PART and DENIED IN PART.  Defendant Jeremy Cannon's Second Motion for Summary Judgment (Dkt. No. 212) is GRANTED IN PART and DENIED IN PART.  The Court grants summary judgment in favor of Defendants

13

Collison and Cannon on Plaintiff's wrongful death claims and finds that Plaintiff, individually, lacks standing to assert her § 1983 claims. The Motions are denied in all other respects.

IT IS SO ORDERED this 16th day of March, 2015.

ROBIN J. CAUTHRON
United States District Judge