IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MANDI WRIGHT, Individually and as Administrator of the Estate of CORY WRIGHT, Deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. CIV-11-1235-C |
| GARY STANLEY, individually and in his official capacity as Sheriff of Woodward County; JENNIFER COLLISON, in her individual capacity; JEREMY CANNON, in his individual capacity; BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF WOODWARD; | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the Motions for Summary Judgment of Defendants Gary Stanley and the Woodward County Board of County Commissioners ("the Board") (Dkt. Nos. 209 & 210). Each Motion has a Response (Dkt. Nos. 223 & 224) and a Reply (Dkt. Nos. 230 & 231). The Motions are now at issue.

## I. BACKGROUND

On the night of August 16, 2011, Plaintiff's husband, Cory Wright, was arrested on complaint of driving under the influence of alcohol. Police also arrested Wright's passengers David Anglin and Jeff Tindel for public intoxication. All three were booked into the Woodward County Jail ("WCJ"). The jail was over capacity at that time, and it is undisputed that overcrowded conditions were a recurring problem at the WCJ prior to Wright's arrest.

A new jail facility was being constructed but did not open until November 2011, about three months after Wright's arrest. Defendant Gary Stanley is the Sheriff of Woodward County and manages the WCJ. Sheriff Stanley was not present at the WCJ the night of Wright's arrest. Jennifer Collison and Jeremy Cannon were the jailers on duty that night. Although jail policy requires intoxicated persons to be separated from the general population, Collison assigned Wright to Cell 6. Cannon and Collison both testified that they believed Wright and Tindel would fight each other if placed in the drunk tank together. Cell 6 had an inmate capacity of 4 and already contained 5 inmates. Michael Riggs, an inmate being held in Cell 6, told Cannon that placing Wright in Cell 6 would not work because the cell was already full.[1] Plaintiff alleges the inmates in Cell 6 threatened, in the presence of the jailer, to harm Wright. Shortly after Wright was placed in Cell 6, some of the inmates assaulted him. Wright suffered injuries to his face and was treated at Woodward Regional Hospital emergency room. Wright was released from the jail and the hospital on the day after his arrest. Wright filed this lawsuit in October 2011 but passed away in November 2011 from an overdose of prescription pills. Plaintiff is now Mandi Wright, "as Administrator of the Estate of Cory Wright." Plaintiff alleges the Board and Sheriff Stanley are liable pursuant to 42 U.S.C. § 1983 for the injuries Wright sustained at the WCJ. Specifically, Plaintiff alleges that Sheriff Stanley and the Board "maintained an official practice of housing arrestees in overcrowded cells with actual knowledge that such a practice created a

---

[1] A genuine dispute of material fact exists as to whether Defendant Collison was present when Wright was placed in Cell 6. (See Order, Dkt. No. 249, at 7.)

substantial risk of serious harm to arrestees" and thus acted with deliberate indifference in violation of the Due Process Clause of the Fourteenth Amendment. (Sixth Am. Cmpl., Dkt. No. 187, at 8.) Plaintiff also alleges that Sheriff Stanley failed to adequately train the jail staff to respond to overcrowded conditions.

Both Defendants argue the Court must grant summary judgment in their favor for several reasons. The Board argues that it is not, as a matter of law, a proper party to this lawsuit.[2] Both Defendants argue they cannot be held liable for "deliberate indifference" because neither had requisite knowledge of any risk of harm to Wright and because reasonable steps were taken to alleviate the overcrowded conditions. Sheriff Stanley also asserts that he is entitled to qualified immunity.[3]

## II.  STANDARD OF REVIEW

Summary judgment is properly granted if the movant shows that no genuine dispute as to any material fact exists and that the movant "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it affects the disposition of the substantive claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 247, 248 (1986). The party seeking summary judgment bears the initial burden of demonstrating the basis for its motion and of identifying

---

[2] The Board also argues for summary judgment in its favor on Plaintiff's claim of "excessive force." The Court need not address this argument because that claim has been dismissed. (See Order, Dkt. No. 248.)

[3] Both Defendants note that Plaintiff, individually, lacks standing to prosecute the asserted 42 U.S.C. § 1983 claims. The Court clarified this issue in a previous order, holding that "the only appropriate party is Wright's estate, and Plaintiff, individually, has no claim for damages on behalf of herself or her children." (Order, Dkt. No. 249, at 13.)

those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted). If the movant satisfactorily demonstrates an absence of genuine issue of material fact with respect to a dispositive issue for which the non-moving party will bear the burden of proof at trial, the non-movant must then "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324. These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." Id. Such evidentiary materials include affidavits, deposition transcripts, or specific exhibits. Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir. 1992). When considering a motion for summary judgment, a court must "'view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party.'" Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1225 (10th Cir. 2000) (quoting Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir. 1999), *abrogated on other grounds by* Eisenhour v. Weber Cnty., 739 F.3d 496 (10th Cir. 2013)).

### III.  CONDITIONS OF CONFINEMENT

The Eighth Amendment's Cruel and Unusual Punishments Clause[4] "does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. 337, 349 (1981). It does, however,

---

[4] U.S. Const. Amend. VIII.

require prison officials to "provide humane conditions of confinement." Farmer v. Brennan, 511 U.S. 825, 832 (1994). Prison officials "must 'take reasonable measures to guarantee the safety of the inmates.'" Id. (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). The Supreme Court has been firm in its resolve that "having stripped [inmates] of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." Id. at 833. Because Wright was a pretrial detainee, Plaintiff's claims arise under the protections of "the Due Process clause rather than the Eighth Amendment." Lopez v. LeMaster, 172 F.3d 756, 759 n.2 (10th Cir. 1999) (citing Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979)). However, the analysis is the same. Id. (citing Hare v. City of Corinth, 74 F.3d 633, 643 (5th Cir. 1996)). An Eighth Amendment claim has two requirements. "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" Farmer, 511 U.S. at 834. "Overcrowding alone is not 'sufficiently serious' to establish a constitutional violation." Stevenson v. Whetsel, 52 F. App'x 444, 446 (10th Cir. 2002) (citing Rhodes, 452 U.S. 348-49). Plaintiff must show that Wright was "incarcerated under conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 834. Both Defendants concede that Wright's injuries are sufficiently serious to meet this objective element. (Def. Stanley's Br., Dkt. No. 209, at 17-18; Def. Bd.'s Br., Dkt. No. 210, at 18.) Second, "a prison official must have a 'sufficiently culpable state of mind.'" Farmer, 511 U.S. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 297 (1991)). "In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. (citing Wilson, 501 U.S. at 302-03). Deliberate indifference, as a standard of liability,

requires more than a showing of negligence; the U.S. Supreme Court has equated deliberate indifference to acting or failing to act with reckless disregard for a substantial risk of serious harm. Id. at 836. However, application of this standard varies depending on whether the defendants are sued in their individual or official capacities, or are municipalities. In the instant case, the Board, as a representative of Woodward County, is equivalent to a municipality. Plaintiff has sued Sheriff Stanley in both his official and individual capacities. Because a "'[section 1983] suit against a municipality and a suit against a municipal official acting in his or her official capacity are the same,'" the Court will treat Plaintiff's conditions of confinement claims against the County and Sheriff Stanley, in his official capacity, as one claim. Myers v. Okla. Cnty. Bd. of Cnty. Commr's, 151 F.3d 1313, 1316 n.2 (10th Cir. 1998) (quoting Watson v. City of Kansas City, 857 F.2d 690, 695 (10th Cir. 1988).

A. Municipal Liability

"Congress *did* intend municipalities and other local government units to be included among those persons to whom § 1983 applies." Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 690 (1978). However, there is no concept of respondeat superior in § 1983 claims. Id. at 691. A municipality is only liable under § 1983 for harm caused "through the execution of its own policy or custom by those whose edicts or acts may fairly be said to represent official policy." Meade v. Grubbs, 841 F.2d 1512, 1529 (10th Cir. 1988), *abrogated on other grounds by* Schneider v. City of Grand Junction Police Dep't, 717 F.3d 760 (10th Cir. 2013). The Board and Sheriff Stanley do not dispute that the practice of maintaining an overcrowded jail constitutes an official policy or custom. To establish

6

liability of the Board and Sheriff Stanley, in his official capacity, Plaintiff must establish the following: (1) that Wright was deprived of a constitutionally protected right, and (2) that the municipal policy or custom was the moving force behind the constitutional deprivation. Monell, 436 U.S. at 694; Winton v. Bd. of Comm'rs of Tulsa Cnty., Okla., 88 F.Supp.2d 1247, 1262 (N.D. Okla. 2000).

The Board argues it is not the proper party because it is an entity distinct from the Sheriff's office and the Sheriff, not the Board, has "charge and custody of the jail of his county." 19 Okla. Stat. § 513. However, the Board cannot defeat potential liability merely by showing that the Sheriff is the official policymaker at the WCJ. Bryson v. Okla. Cnty. ex rel. Okla. Cnty. Det. Ctr., 2011 OK CIV APP 98, ¶ 24, 261 P.3d 627, 636; see also Lopez, 172 F.3d at 763 ("[T]he county may be liable on the basis that [the sheriff] is a final policymaker with regard to its jail, such that his actions 'may fairly be said to be those of the municipality.'") (quoting Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 404 (1997)). The U.S. Supreme Court has made it clear that any official or entity whose actions represent official policy may be liable under § 1983. Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986) (quoting Monell, 436 U.S. at 694). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell, 436 U.S. at 694. Another judge in this district has recognized that "the county's board of commissioners sets policies, including fiscal policies, that may be implicated in a violation of a county inmate's federal rights."

Harper v. Woodward Cnty. Bd. of Cnty. Comm'rs, No. CIV-11-0996-HE, 2014 WL 7399367, at *9 (W.D. Okla. Dec. 29, 2014). In the instant case, Plaintiff's claims concern matters falling under the authority of the Board. Plaintiff asserts that Wright's injuries are causally linked to the County's long-standing practice of maintaining overcrowded jail conditions in dereliction of its duties to provide a jail adequate for the safekeeping of prisoners and to prioritize funding. Oklahoma law requires every board of county commissioners in Oklahoma to provide a jail "for the safekeeping of prisoners lawfully committed." 57 Okla. Stat. § 41.[5] This duty is constitutional as well as statutory. Bryson, 2011 OK CIV APP 98, ¶ 25, 261 P.3d at 637. Also, "because the necessary maintenance of a jail is a constitutional duty, a county must first appropriate funds for such duty and any other constitutional duties before any county funds are expended for statutory duties or other functions." Okla. A.G. Opin., No. 07-35, 2007 WL 4699709 (Oct. 23, 2007). The Board's reliance on Meade and Janzten v. Hawkins[6] is not persuasive. Meade involved a claim that a deputy sheriff used excessive force against an arrestee. In Janzten, several deputy sheriffs and a jailer claimed the county sheriff improperly terminated their employment in violation of the First Amendment. In both cases, the Tenth Circuit ruled the Board of County Commissioners could not be held liable because it had no authority or responsibility over the hiring, training, or supervision of county law enforcement officers. See Meade, 841 F.2d at

---

[5] "Every county, by authority of the board of county commissioners and at the expense of the county, shall have a jail or access to a jail in another county for the safekeeping of prisoners lawfully committed." 57 Okla. Stat. § 41.

[6] 188 F.3d 1247 (10th Cir. 1999).

1528; see also Janzten, 188 F.3d at 1259.  In the instant case, Plaintiff does not argue the Board is liable for the actions of employees under the supervision of the Sheriff Stanley or for the actions of Sheriff Stanley as a supervisor.  Rather, Plaintiff argues the Board is liable for its own inaction in failing to address the overcrowded conditions of the WCJ.  Because the Board has authority to set policies impacting the conditions at the WCJ, any argument that the Board cannot be held liable as a matter of law must fail.

The Board and Sheriff Stanley argue Plaintiff's conditions of confinement claim must fail because Plaintiff cannot show that either Defendant was deliberately indifferent.  A municipality shows deliberate indifference when it "has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm."  Barney v. Pulsipher, 143 F.3d 1299, 1307 (10th Cir. 1998) (citing Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 407-08 (1997)).  Plaintiffs generally establish notice by "proving the existence of a pattern of tortious conduct."  Id.  However, it is undisputed in the instant case that inmate-on-inmate violence was a rare occurrence prior to Wright's assault, and "inmate violence did not increase appreciably with overcrowding conditions."  (Def. Bd.'s Br., Dkt. No. 210, at 8.)  "[D]eliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a 'highly predictable' or 'plainly obvious' consequence of a municipality's action or inaction."  Barney, 143 F.3d at 1307-08.

The Board and Sheriff Stanley argue Plaintiff cannot show that either Defendant disregarded a known or obvious risk that the overcrowded conditions would result in inmate-

on-inmate violence because Plaintiff cannot demonstrate that either Defendant knew of any such risk of harm. There is no dispute that both the Board and Sheriff Stanley knew the jail was overcrowded at the time of Wright's arrest and that overcrowding had been a recurring condition since at least 2008.[7] From October 2007 to May 2011, the WCJ received at least seven citations from jail inspectors for the State Department of Health based, in part, on overcrowding. (Pl.'s Resp., Dkt. No. 223, Ex. 1.) The Defendants have presented evidence that the jail staff monitored the inmates closely, that inmate violence was a rare occurrence prior to Wright's assault, and that inmate violence did not increase appreciably with the overcrowded conditions. Sheriff Stanley and a representative of the Board both testified that the conditions of jail, while dangerous for the jail staff, were adequate for the safekeeping of prisoners. (Def. Bd.'s Br., Dkt. No. 210, Ex. 2, at 59-60, 65-66, & 112-13; Def. Bd.'s Br., Dkt. No. 210, Ex. 17, at 59.) The Board's representative testified that the Board relied on Sheriff's Stanley representations and believed Sheriff Stanley was adequately managing the jail and taking actions to reduce inmate population. (Id., Ex. 17, at 33.) Although the Board and Sheriff Stanley assert that they had no notice or knowledge of a risk of harm to the inmates as a result of the overcrowded conditions, Plaintiff presents some evidence proving otherwise. In 2009, the Board commissioned a report from jail consultant Don Jones. That

---

[7] Plaintiff asserts the Board has known the WCJ lacked adequate capacity since the 1970s and presents as evidence a letter purportedly written by the Board. The Board argues the letter is inadmissible because the letter is an unsigned draft with no evidence as to who drafted it or whether the Board reviewed it. Regardless of whether the letter is inadmissible, the Board admits that overcrowding had been a recurring problem since 2008, and the evidence shows the WCJ was cited, in part, for overcrowding as early as October 29, 2007. (Pl.'s Resp., Dkt. No. 223, Ex. 1, at 1-4.)

report states the following: "The county jail is almost 32 years old. It is not safe for the jail staff or inmates. The jail does not meet any state jail standards, or state fire codes." (Pl.'s Resp., Dkt. No. 223, Ex. 12, at 2.) Plaintiff also presents a flyer that Sheriff Stanley created and circulated in 2009 to encourage Woodward citizens to vote for a sales tax for the construction of a new jail. That flyer describes the WCJ as overcrowded and asserts that a new jail is needed to "PROTECT Inmates from injuring each other and themselves." (Id., Ex. 13.) Both Defendants assert that Sheriff Stanley disagreed with the consultant's report and argue the flyer is merely campaign puffery. However, it is not the Court's function at the summary judgment stage "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. Plaintiff has presented sufficient evidence to establish that a genuine dispute exists as to whether the Board and/or Sheriff Stanley had actual or constructive notice that the overcrowded conditions were "substantially certain to result in a constitutional violation." Barney, 143 F.3d at 1307.[8]

The Board and Sheriff Stanley also argue that Plaintiff cannot establish deliberate indifference because both Defendants took reasonable steps to alleviate the overcrowded conditions. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the

_____

[8] Plaintiff also presents a newspaper article that quotes Sheriff Stanley as saying that a jail inspector had informed Sheriff Stanley that the WCJ "was the second most dangerous jail in the state for inmates." (Pl.'s Resp., Dkt. No. 223, Ex. 14.) Both Defendants argue that the news story is inadmissible hearsay. Regardless of whether the news article is inadmissible, Plaintiff has presented other evidence sufficient to raise a genuine issue of material fact.

harm ultimately was not averted." <u>Farmer</u>, 511 U.S. at 844.  The following facts are undisputed:  At the time of Wright's arrest, construction on a new jail was underway; in 2009, Sheriff Stanley spoke with the Woodward County district attorney and a judge about reducing the amount of bonds on incoming inmates to help reduce overcrowding; Sheriff Stanley had previously contacted other jails to find space for Woodward County inmates; in September 2009, the Board contracted with the Board of County Commissioners of Custer County to allow Woodward County inmates to be housed in the Custer County Jail at the expense of Woodward County; and, finally, the WCJ had an informal arrangement with the Woodward City Jail to take a few Woodward County inmates if room was available.

The Court is not persuaded that these facts are a sufficient basis for summary judgement.  While the new jail facility may have improved conditions for prisoners held after November 2011, there is no evidence that construction of the new jail improved conditions at the WCJ for Wright and other prisoners held before the new facility's opening.  <u>See Winton</u>, 88 F.Supp.2d at 1266.  Defendants have produced no case law showing that Sheriff Stanley's discussions with the district attorney and a judge, occurring about two years prior to the assault on Wright, constitute "reasonable steps."  Plaintiff argues the other steps listed are "merely token gestures."  (Pl.'s Br., Dkt. No. 224, at 6.)  Plaintiff has provided evidence that the WCJ was overcrowded for 896 days preceding the assault on Wright; that the Board chose not to prioritize jail funding; and that in the three years prior to August 2011, Sheriff Stanley only contacted five other counties, once each, regarding the possible transfer of

inmates and failed to contact other nearby counties.[9] Plaintiff also presents some evidence that the Board and Sheriff Stanley failed to utilize other interim measures, such as early release, bond reduction, and ankle monitor bracelets. "A prison official may be liable for a substantial risk of serious harm to inmates in spite of efforts reasonably calculated to reduce the risk, if he intentionally refuses other reasonable alternatives and the dangerous conditions persist." Tafoya v. Salazar, 516 F.3d 912, 918 (10th Cir. 2008). Defendants argue that Plaintiff's evidence is not competent and should be disregarded because Plaintiff has not shown the other measures were feasible. However, the Court is obligated, at the summary judgment stage, to view the evidence and make reasonable inferences in a light most favorable to the plaintiff and is not "to weigh the evidence and determine the truth of the matter." Anderson, 477 U.S. at 249. Bearing this in mind, the Court finds a reasonable jury could find that the Board and Sheriff Stanley did not respond reasonably and thus acted with deliberate indifference to the risk of harm to inmates, including Wright.

Sheriff Stanley argues Plaintiff cannot show a direct causal link between the policy and the constitutional harm. "The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." Brown, 520

---

[9] Plaintiff also argues there is no evidence that the jail use agreement with Custer County had any appreciable effect on the conditions at the WCJ. Plaintiff presents release sheets from the Custer County Sheriff's Office to prove that Sheriff Stanley only transferred a total of 31 inmates to Custer County between September 1, 2009, and August 15, 2011. (Pl.'s Resp., Dkt. No. 224, Ex. 9.) Attached to these documents is an unsigned typed statement on paper with no letterhead alleging that the release sheets represent the recorded bookins for July 2009 to present. The Court finds that Plaintiff has failed to establish a reliable foundation proving that the documents do in fact represent a complete record of the bookins for the dates alleged. Thus, any evidence based on these documents is inadmissible.

U.S. at 404. Both parties agree that inmate Riggs objected to Wright's placement in Cell 6 because the cell was already full. As discussed above, a genuine dispute exists as to whether the Board and Sheriff Stanley knew the overcrowding posed a serious risk of inmate harm and failed to respond reasonably. Viewing the evidence in a light most favorable to the Plaintiff, a reasonable jury could find that the inaction, or ineffective action, of the Board and Sheriff Stanley was the moving force behind the overcrowded conditions at the WCJ and could find that those conditions caused Wright's injuries. See Layton v. Bd. of Cnty. Comm'rs of Okla. Cnty., 512 F. App'x 861, 872 (10th Cir. 2013) (finding plaintiff had demonstrated a "direct causal link" through evidence that the county and the sheriff had notice of the problems in the jail's medical-care system and that the plaintiff's death could have been avoided had the defendants taken any of the possible remedial measures); see also Winton, 88 F.Supp.2d at 1268.

Plaintiff has presented evidence from which a jury could conclude that the Board and Sheriff Stanley, in his official capacity, had actual notice of a serious risk of harm to inmate safety at the WCJ, that both Defendants failed to respond reasonably, and that the inaction or ineffective action of both Defendants was the moving force behind the overcrowded conditions and resulting harm to Wright. Thus, the Motions for Summary Judgment of the Board and Sheriff Stanley, in his official capacity, as it pertains to Plaintiff's conditions of confinement claim must be denied.

B. Sheriff Stanley—Individual Capacity

Sheriff Stanley argues that he cannot be held liable in an individual capacity for Plaintiff's claims because he was not directly involved in the underlying incident. However, "[p]ersonal involvement does not require direct participation." Dodds v. Richardson, 614 F.3d 1185, 1195 (10th Cir. 2010). A defendant-supervisor may be liable if "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." Id. Sheriff Stanley argues Plaintiff cannot establish the second and third elements.

Bearing in mind that the requisite state of mind is one of deliberate indifference, Plaintiff must show that Sheriff Stanley knew of and disregarded "an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. Unlike the standard for municipalities, this standard "is subjective, requiring that the official actually be 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Tafoya, 516 F.3d at 916 (quoting Farmer, 511 U.S. at 837). "An official's failure to alleviate a significant risk of which he was unaware, no matter how obvious the risk or how gross his negligence in failing to perceive it, is not an infliction of punishment and therefore not a constitutional violation." Id. This standard does not require Plaintiff to prove that Sheriff Stanley knew of a risk of harm particular to Wright. Farmer, 511 U.S. at 843. Plaintiff does not need to show that Sheriff Stanley acted or failed to act while believing that Wright would actually suffer harm; it is sufficient to show that Sheriff Stanley "acted or failed to act despite his knowledge of a substantial risk of serious harm." Id. at 842. "[A]

jury is permitted to infer that a prison official had actual knowledge of the constitutionally infirm condition based solely on circumstantial evidence, such as the obviousness of the condition." <u>Tafoya</u>, 516 F.3d at 916-17 (<u>citing</u> <u>Farmer</u>, 511 U.S. at 842). "'The requisite causal connection is satisfied if the defendant[s] set in motion a series of events that the defendant[s] knew or reasonably should have known would cause others to deprive the plaintiff of [his] constitutional rights.'" <u>Trask v. Franco</u>, 446 F.3d 1036, 1046 (10th Cir. 2006) (<u>quoting</u> <u>Snell v. Tunnell</u>, 920 F.2d 673, 700 (10th Cir. 1990)). As discussed above, there is evidence in the record that Wright was placed in a cell that was overcapacity, that Sheriff Stanley knew the overcrowded conditions posed a substantial risk of harm to the inmates, and that Sheriff Stanley failed to respond reasonably. Viewing the evidence in a light most favorable to Plaintiff, the Court finds a reasonable jury could infer that Sheriff Stanley's practice of maintaining overcrowded conditions, and failure to reasonably alleviate the risk of harm, caused the assault on Wright. Thus, Plaintiff has produced sufficient evidence to overcome summary judgment on the conditions of confinement claim against Sheriff Stanley in his individual capacity.

C.  Qualified Immunity

Sheriff Stanley asserts he is entitled to qualified immunity, which is an affirmative defense available to public officials sued in their individual capacities. <u>Barney</u>, 143 F.3d at 1309. "Qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Schwartz v. Booker</u>, 702 F.3d 573, 579

16

(10th Cir. 2012) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). It is not simply a defense: "It is 'an immunity from suit.'" Id. (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). When a defendant's motion for summary judgment rests on a claim of qualified immunity, the Court "must grant qualified immunity unless the plaintiff can show (1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the defendant's conduct." Estate of Booker v. Gomez, 745 F.3d 405, 411 (10th Cir. 2014). If Plaintiff successfully meets this burden, then Sheriff Stanley, as movant for summary judgment, bears the burden of showing that no material issues of fact would defeat the claim of qualified immunity. Id. at 412 (citing Mick v. Brewer, 76 F.3d 1127, 1134 (10th Cir. 1996)).

Sheriff Stanley has failed to meet this burden. The Court has determined that facts material to Plaintiff's conditions of confinement claim are disputed and that a reasonable jury could find Sheriff Stanley liable for disregarding a substantial risk to prisoner safety in violation of the Fourteenth Amendment. Furthermore, any argument that Sheriff Stanley's actions did not violate a clearly established right is without merit. "The law is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as plaintiff maintains." Roska ex rel. Roska v. Peterson, 328 F.3d 1230, 1248 (10th Cir. 2003). This does not require case law holding that the specific action at issue is unlawful. See Armijo by and Through Chavez v. Wagon Mound Pub. Sch., 159 F.3d 1253, 1260 (10th Cir. 1998). Plaintiff need only establish that "'the asserted right's contours are sufficiently clear such

that a reasonable official would understand that what he is doing violates that right.'" Id. (quoting Clanton v. Cooper, 129 F.3d 1147, 1156 (10th Cir. 1997)).  In 1994, the U.S. Supreme Court clearly established that "'prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners.'"  Farmer, 511 U.S. at 833 (quoting Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 558 (1st Cir. 1988).  Farmer also clearly set forth the principle that "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  Id. at 847.  At least as early as 1999, the Tenth Circuit made clear that pretrial detainees are afforded the same protection under the Fourteenth Amendment.  Lopez, 172 F.3d at 759 n.2.  Therefore, the law had been clearly established at the time of the incident that Sheriff Stanley had a duty to take reasonable measures to protect the WCJ inmates from conditions of confinement posing a substantial risk of serious harm.  Because a question of fact remains as to whether Sheriff Stanley disregarded this duty, Sheriff Stanley is not entitled to qualified immunity.

## IV.  FAILURE TO TRAIN

Plaintiff asserts that Sheriff Stanley failed to adequately train jail staff to respond to the overcrowded conditions and that this failure caused the jailers to place Wright inside the overcrowded cell with inmates intending to harm Wright.  This claim requires Plaintiff to establish that Sheriff Stanley, sued in both his official and individual capacities, acted with deliberate indifference.  See Barney, 143 F.3d at 1307-10.

## A.  Official Capacity

"A municipality can be liable where 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need.'"  Schneider v. City of Grand Junction Police Dep't, 717 F.3d 760, 773 (10th Cir. 2013) (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 387 (1989)). Plaintiff has failed to show that need for more or different training was obvious, and the Court is not persuaded that Wright's injuries are a plainly obvious consequence of failing to train jailers to respond in specifically overcrowded conditions.  In denying such claims, the Tenth Circuit has held that "[s]pecific or extensive training hardly seems necessary for a jailer to know that sexually assaulting inmates is inappropriate behavior."  Barney, 143 F.3d at 1308.  Similarly, the Court finds that specific or extensive training on responding to overcrowded conditions is not necessary for a jailer to know that placing a pretrial detainee in a cell with other inmates who are threatening to harm the detainee is wrongful conduct.

## B.  Individual Capacity

Sheriff Stanley, individually, "is liable only if [he] '*knows* of and disregards an excessive risk to inmate health and safety.'"  Id. at 1310 (emphasis added) (quoting Farmer, 511 U.S. at 837).  Plaintiff has failed to produce evidence showing that Sheriff Stanley knew that failing to train jailers to deal specifically with the overcrowded conditions posed an excessive risk to inmate safety.  The evidence shows that jailers at the WCJ received annual jailer training required by the Oklahoma Jail Standards and that inmate-on-inmate violence

was a rare occurrence prior to the assault on Wright. Sheriff Stanley, Collison, and Cannon testified that the overcrowded conditions did not impact the ability of the jailers to supervise the inmates. (Def. Stanley's Br., Dkt. No. 209, Ex. 2, at 38 & 45; Id., Ex. 4, at 58; Id., Ex. 8 at 65.) Plaintiffs argument that Stanley, Collison, and Cannon are not qualified to render such an opinion is without merit. Opinion testimony of lay witnesses is admissible when the witnesses have personal knowledge of the matter and their opinions are rationally based on their perceptions. Fed. R. Evid. 602; Fed. R. Evid. 701. Without any evidence that overcrowded conditions have caused previous acts of violence or that inadequate training has caused previous constitutional violations, Plaintiff has failed to raise a question of fact as to whether Sheriff Stanley acted with deliberate indifference. See Barney, 143 F.3d at 1311.

Based on the reasoning above, Sheriff Stanley's Motion for Summary Judgment on Plaintiff's claim of failure to train must be granted.

## V.  WRONGFUL DEATH

To hold the Board and Sheriff Stanley liable for Wright's death, and thereby claim wrongful death damages, Plaintiff must show the alleged constitutional violation caused Wright's death. Martinez v. Carson, 697 F.3d 1252, 1255 (10th Cir. 2012) ("Section 1983 imposes liability on a government official who 'subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights.") (quoting 42 U.S.C. § 1983). This Court determined in a prior order that Wright's action in taking a fatal amount of prescription pills more than three months after the assault at the WCJ constitutes an unforeseeable superseding cause. (Order, Dkt. No. 249, at 11.) Superseding causes relieve a defendant of liability

because they are "'not within the scope of the risk created by the actor's conduct.'"  See James v. Chavez, 511 F. App'x 742, 747 (10th Cir. 2013) (quoting Restatement (Second) of Torts § 442B (1965)).  Thus, the Board and Sheriff Stanley cannot be held liable for Wright's death.

## VI.  CONCLUSION

Accordingly, Defendant Board of County Commissioners of the County of Woodward's Second Motion for Summary Judgment (Dkt. No. 210) is GRANTED IN PART, DENIED IN PART, and is MOOT IN PART.  Defendant Gary Stanley's, in his Individual and Official Capacity, Second Motion for Summary Judgment (Dkt. No. 209) is GRANTED IN PART and DENIED IN PART.  The Court grants summary judgment in favor of the Board and Sheriff Stanley on Plaintiff's wrongful death claims.  The Court grants summary judgment in favor of Sheriff Stanley on Plaintiff's failure to train claim. Plaintiff's excessive force claim against the Board was previously dismissed, rendering that portion of the Board's motion moot.  The Motions are denied in all other respects.  A judgment will enter at the conclusion of the case.

IT IS SO ORDERED this 8th day of June, 2015.

ROBIN J. CAUTHRON
United States District Judge